**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Carl Greer MacDONALD,**
**Defendant–Appellant.**

No. 02–30245.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 2003.

Filed Aug. 13, 2003.

Wendy Holton, Helena, MT, for the defendant-appellant.

William M. Mercer, United States Attorney, and Bernard F. Hubley, Assistant United States Attorney, U.S. Attorney's Office, Helena, MT, for the plaintiff-appellee.

Before B. FLETCHER, BRUNETTI, and McKEOWN, Circuit Judges.

## OPINION

McKEOWN, Circuit Judge.

This appeal arises out of Carl Greer MacDonald's participation in the production of methamphetamine on public lands in Montana. MacDonald pled guilty to a federal conspiracy charge and was sentenced to 30 months imprisonment. The district court enhanced his sentence under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") due to the unlawful discharge of a hazardous or toxic substance in connection with the violation. MacDonald disputes the applicability of a hazardous substance determination to his circumstances and now appeals that sentence. Because the district court did not clearly err in its factual findings and did not abuse its discretion in applying the enhancement, we affirm.

### BACKGROUND

MacDonald was charged in a single-count indictment for conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 846. He pled guilty and admitted to participating with others in the methamphetamine production on Montana public lands. In the plea agreement, the Government agreed to recommend a base offense level of 12 under the Guidelines, with reductions for MacDonald's acceptance of responsibility and minor role in the offense. The Presentence Report ("PSR") incorporated these calculations, as well as a recommended two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(5)(A) for disposal of hazardous materials. These adjustments, in combination with MacDonald's criminal history calculations, resulted in a sentencing range of 24 to 30 months.

MacDonald and co-conspirator Steven Listoe objected to the hazardous materials enhancement. At Listoe's sentencing hearing, the Government and the defense both called witnesses to testify on the is-

sue, and MacDonald incorporated Listoe's arguments and exhibits into the record at his own hearing. Listoe called Terry Spear, Ph.D., a professor and head of the Industrial Hygiene Department at Montana Tech of the University of Montana. The Government called Michael Cromier, M.S. ("Cromier"), an environmental scientist for Maxim Technologies ("Maxim"). Maxim served as a contractor to conduct chemical testing at public camp sites where the methamphetamine was manufactured.

The district court found that there was an unlawful "discharge" of a hazardous waste at Telegraph Creek and Jackson Creek, two sites at which MacDonald was involved in the conspiracy to manufacture methamphetamine. Consequently, the court concluded that there was an unlawful "disposal" of hazardous waste and that a two-level enhancement under U.S.S.G. § 2D1.1(b)(5)(A) was warranted for both Listoe and MacDonald.

### DISCUSSION

■ Section 2D1.1(b) of the Guidelines provides for adjustments to the sentence of a defendant convicted for an offense involving the manufacture, distribution, or possession of drugs. Subsection (5)(A), in particular, requires courts to increase the base offense level by two levels "[i]f the offense involved (i) an unlawful discharge, emission, or release into the environment of a hazardous or toxic substance; or (ii) the unlawful transportation, treatment, storage, or disposal of a hazardous waste." U.S.S.G. § 2D1.1(b)(5)(A). The Guidelines further instruct that subsection (5)(A) applies if the defendant's conduct involved "any discharge, emission, release, transportation, treatment, storage, or disposal violation covered by [*inter alia*] the Resource Conservation and Recovery Act

[RCRA], 42 U.S.C. § 6928(d)." U.S.S.G. § 2D1.1, cmt. (n.19).

RCRA is an environmental management statute that delegates to the Environmental Protection Agency ("EPA") the development and implementation of a "cradle to grave" regulatory system overseeing the treatment, storage, and disposal of hazardous waste. *Chem. Waste Mgt., Inc. v. Hunt,* 504 U.S. 334, 338 n. 1, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992) (internal quotation marks and citations omitted). Section 6928(d), to which the Guidelines refer, criminalizes a range of activities related to the unlawful generation, transportation, storage, treatment, and disposal of a "hazardous waste" identified or listed under RCRA. *See United States v. Fiorillo,* 186 F.3d 1136, 1147 (9th Cir.1999). A "hazardous waste" is:

> a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may—
>
> (A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or
>
> (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

42 U.S.C. § 6903(5).

RCRA charges the EPA with the "identification and listing" of hazardous wastes that meet the statutory definition, and instructs the agency to develop specific criteria for doing so. *Id.* at § 6921. The EPA has, accordingly, established a comprehensive regulatory scheme that classifies hazardous wastes as either "listed" or "characteristic" hazardous substances. *See* 40 C.F.R. § 261.3(a). Several hundred substances are now "listed" as hazardous wastes in the Code of Federal Regulations. *See* 40 C.F.R. §§ 261.30–261.38 (subpart

D). Other substances can qualify as hazardous waste if testing shows that they exhibit the "characteristics" of hazardous waste. *See* 40 C.F.R. §§ 261.3(a)(2)(i), 261.20(a).

MacDonald mistakenly reads § 6903(5) to mean that, in order to qualify as a "hazardous waste," a given substance must exist in sufficient quantity to create the potential for causing harm. But under § 6903(5), which provides that a substance may meet the definition "because of its quantity, concentration, *or* physical, chemical, or infectious characteristics," there is no threshold "quantity" required by statute. 42 U.S.C. § 6903(5) (emphasis added). MacDonald also ignores the overall regulatory structure created by RCRA. "Congress supplied only a broad definition of 'hazardous waste' in RCRA, delegating to EPA the task of promulgating regulations identifying the characteristics of hazardous waste and listing specific wastes as hazardous." *Natural Res. Def. Council v. EPA,* 25 F.3d 1063, 1065 (D.C.Cir.1994) (footnote omitted). In order to determine whether a substance is "covered by" RCRA for purposes of MacDonald's sentence, we do not need to retrace the steps of the EPA and make an independent determination of toxicity, but may instead incorporate those substances that the EPA has, under its delegated authority, designated as either listed or characteristic hazardous wastes.

 The district court held that § 2D1.1(b)(5) of the Guidelines applies to MacDonald because it found that there was an "unlawful discharge" and "unlawful disposal" of a hazardous waste covered by RCRA at two of the public sites where the methamphetamine production occurred. We review that court's factual findings at sentencing for clear error, *see United States v. Smith,* 282 F.3d 758, 772 (9th Cir.2002), meaning that we defer to

the district court unless we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Crook*, 9 F.3d 1422, 1427(9th Cir. 1993) (citation and internal quotation marks omitted). We review the district court's application of § 2D1.1(b)(5)(A) for abuse of discretion. *See United States v. Alexander*, 287 F.3d 811, 818 (9th Cir. 2002).

The Government maintains that the testimony at Listoe's sentencing hearing supports the district court's finding because the testimony clearly established that (1) certain constituents of methamphetamine ingredients were found at the production sites; (2) MacDonald conspired to dispose of those substances; and (3) the constituent substances are "listed" under RCRA as hazardous substances. Although we do not view the testimony quite as syllogistically self-evident as the Government makes it out to be, the testimony, in combination with the other record evidence, leads us to conclude that the findings and conclusions of the district court deserve deference.

Section 2D1.1(b)(5) is triggered by a disposal or discharge of a waste "covered" by RCRA, whether it be a listed or characteristic waste. Cromier, the expert from Maxim, testified that this requirement was met. When asked generally whether the evidence he found at the production sites "reflects the pouring of a listed hazardous chemical or constituent onto the ground," Cromier responded in the affirmative. He testified to the same when questioned by the court, stating that he "believe[d] there's an illegal disposal of hazardous waste, which is a product such as naptha

or acetone or other products that were used at these sites." [1] An exhibit submitted by the Government and incorporated into the record at MacDonald's sentencing hearing attests that naptha and acetone are "covered under" RCRA. The record also establishes that the trash left behind at one of the sites in question included containers for substances that are covered by RCRA. Nothing in the record refutes Cromier's testimony, which supports the district court's finding.

MacDonald places abundant emphasis on evidence provided by Spear, the expert from Montana Tech. But Spear's testimony only related to reported observations of toxicity levels for soils that had been cleaned up by Maxim. Because the toxicity levels were derived from soils tested after a cleanup had occurred, he could not verify whether there was an actual disposal or discharge of a hazardous waste. In fact, he readily agreed with Cromier that if a hazardous chemical covered by RCRA *had* actually been poured on the ground, that conduct in itself would have violated the statute. Spear's testimony on toxicity does not undermine or contradict Cromier's conclusion that there was a disposal of a waste covered by RCRA. Under the statutory scheme, the discharge or disposal of a listed substance is sufficient; presence of a toxic quantity of the substance after clean-up is not required.[2]

In sum, we are not left with a firm conviction that the district court erred in its findings of fact. Nor can we say, given these facts, that the district court abused its discretion in applying the two-point en-

---

1. Cromier also testified that xylene, which is listed as a hazardous waste at 40 C.F.R. § 261.31(a), was found at one of the sites. He stated that Heet "may" contain xylenes, giving the court further confirmation that there was a disposal of a hazardous waste in connection with the methamphetamine production.

2. MacDonald's counsel conceded at oral argument that there were substances at the sites that indicate the disposal of chemicals that the EPA has listed as hazardous.

hancement for disposal or discharge of a hazardous waste.

AFFIRMED.