357 F.3d 900
 In re GRAND JURY SUBPOENA (MARK TORF/TORF ENVIRONMENTAL MANAGEMENT),
United States of America, Petitioner-Appellee,
v.
Mark Torf, Torf Environmental Management, Respondent-Appellant.
In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management),
United States of America, Petitioner-Appellee,
Dennis D. Ellis, Intervenor-Appellant.
In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management),
United States of America, Petitioner-Appellee,
Dennis D. Ellis, Intervenor-Appellant.
In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management),
United States of America, Petitioner-Appellee,
Ponderosa Paint Manufacturing, Inc., Intervenor-Appellant.
In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management),
United States of America, Petitioner-Appellee,
Ponderosa Paint Manufacturing, Inc., Intervenor-Appellant.
 No. 03-30102.
 No. 03-30104.
 No. 03-30107.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted September 8, 2003.
 Filed November 26, 2003.
 Amended February 9, 2004.
 
 COPYRIGHT MATERIAL OMITTED David Nevin, Nevin, Benjamin, & McKay, Boise, ID, for appellant-Torf.
 Paul Westberg, Westberg, McCabe & Collins, Boise, ID, for appellant-Ellis.
 John C. McCreedy, Naylor, Hales & McCreedy, Boise, ID, for appellant-Ponderosa Paint Manufacturing, Inc.
 Katherine Barton, Department of Justice, Environmental & Natural Resources Division, Washington, DC, for appellee-United States.
 Appeal from the United States District Court for the District of Idaho, B. Lynn Winmill, District Judge, Presiding. D.C. No. GJ-00-00036-BLW.
 Before: THOMPSON, HAWKINS, and BERZON, Circuit Judges.
 
 ORDER
 
 1
 IT IS HEREBY ORDERED that the opinion filed November 26, 2003 and published at 350 F.3d 1010 is amended as follows:
 
 
 2
 * At 350 F.3d at page 1013, the paragraph which begins "We have jurisdiction over these consolidated appeals", and which paragraph immediately precedes "BACKGROUND" is deleted, and the following paragraph is inserted in its place:
 
 
 3
 We have jurisdiction over these consolidated appeals pursuant to 28 U.S.C. § 1291. We reverse the district court's order denying the motion to quash. Torf created the withheld documents at the direction of McCreedy, an attorney who was hired to defend Ponderosa in impending litigation with the government. The documents are protected by the work product doctrine because they were created in anticipation of litigation. The government did not contend in the district court, as it had contended before the magistrate judge and as it contends in its brief in this court, that it had either a substantial need for the documents or that it would incur undue hardship in obtaining substantially equivalent information. See Fed.R.Civ.P. 26(b)(3). We decline to consider this contention by the government in this appeal. Because the subpoena should have been quashed, we vacate the district court's order holding Torf in civil contempt for not complying with it.
 
 II
 
 4
 At 350 F.3d at page 1018, the paragraph which begins "Finally, the government contends ...", and which paragraph immediately precedes "CONCLUSION" is deleted, and the following paragraphs are inserted in its place:
 
 
 5
 The government contended in proceedings before the magistrate judge, as it does in its brief filed with this court, that it has a substantial need for the withheld documents and that it would incur undue hardship in obtaining substantially equivalent information. See Fed.R.Civ.P. 26(b)(3). Ponderosa responded to these arguments before the magistrate judge, asserting that it had provided the government with documents pertaining to the applicable sites pursuant to the Information Request and Consent Order, and the government's representatives were present at those sites on several occasions. The magistrate judge resolved the dispute in favor of Ponderosa, ruling that the government had "not shown or demonstrated substantial need, hardship or unavailability necessary to overcome the qualified immunity of work product." The government did not object in the district court to that ruling.
 
 
 6
 The failure to object in the district court to a magistrate judge's finding of fact waives a challenge to that finding. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir.1998). The failure to object to a magistrate judge's "pure" legal conclusion, however, may not. Id. "Rather, a failure to object to such a[pure legal] conclusion `is a factor to be weighed in considering the propriety of finding waiver of an issue on appeal.'" Id. quoting Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir.1991).
 
 
 7
 As in Turner, the magistrate judge's ruling in this case involves factual as well as legal determinations. The ruling defies classification as either a purely factual finding or a purely legal conclusion. What is clear, however, is that the ruling explicitly sets forth the magistrate judge's decision rejecting the very arguments the government now wishes to make, and reciting the facts upon which the magistrate judge's decision is based. What is also clear is that, with this decision in hand, the government eschewed presenting to the district court any contention of substantial need or undue hardship. Instead, it framed the issue as limited to whether the work product doctrine would protect a document if it were generated for a purpose other than litigation. The government stated:
 
 
 8
 In sum, a proper analysis as to the withheld documents must be conducted on a document by document basis. If the document would not have been generated `but for' litigation, it is privileged. However, if it was generated for purposes other than litigation, even though litigation may have been a `real possibility', it must be disclosed. Government's motion for de novo review of the magistrate court's order, filed in the district court Nov. 1, 2002, at 7 (emphasis added).
 
 
 9
 In view of the foregoing, we decline to consider the government's contention made in its brief filed with this court, but not presented to the district court, that it has a substantial need for the withheld documents and that it would incur undue hardship in obtaining substantially equivalent information.
 
 
 10
 IT IS FURTHER ORDERED that petitions for rehearing and for rehearing en banc may be filed following the filing of this Order Amending Opinion. See Ninth Circuit General Order 5.3a.
 
 OPINION
 DAVID R. THOMPSON, Senior Circuit Judge:
 
 11
 In May 2000, the Environmental Protection Agency ("EPA") informed Ponderosa Paint Manufacturing, Inc. ("Ponderosa") that it was under investigation for violating federal waste management laws. Ponderosa hired attorney John McCreedy to advise and defend it in anticipated civil and criminal litigation with the government. McCreedy, on behalf of Ponderosa, retained Mark Torf, an environmental consultant, to assist him in preparing a legal defense for Ponderosa and as an environmental consultant on Ponderosa's cleanup efforts at the sites that aroused the EPA's suspicions.
 
 
 12
 Seeking to avoid litigation, Ponderosa submitted numerous documents to the EPA pursuant to an Information Request from the EPA and an Administrative Consent Order ("Consent Order") between Ponderosa and the EPA. Many of these documents were prepared by Torf. The EPA was satisfied that Ponderosa complied with both the Information Request and the Consent Order.
 
 
 13
 On March 6, 2002, however, a grand jury investigating Ponderosa issued a subpoena to Torf for "any and all records relating in any way to any work" regarding "the disposal of waste material ... from Ponderosa Paint[.]" Torf produced some documents relating to his environmental-consultant responsibilities, but withheld other documents, claiming on behalf of Ponderosa that the withheld documents were protected by the work product doctrine. The magistrate judge overseeing the grand jury proceedings agreed, and quashed the subpoena. The district court reversed the magistrate judge's order, denied the motion to quash, and held Torf in civil contempt for refusing to produce the documents.
 
 
 14
 We have jurisdiction over these consolidated appeals pursuant to 28 U.S.C. § 1291. We reverse the district court's order denying the motion to quash. Torf created the withheld documents at the direction of McCreedy, an attorney who was hired to defend Ponderosa in impending litigation with the government. The documents are protected by the work product doctrine because they were created in anticipation of litigation. The government did not contend in the district court, as it had contended before the magistrate judge and as it contends in its brief in this court, that it had either a substantial need for the documents or that it would incur undue hardship in obtaining substantially equivalent information. See Fed.R.Civ.P. 26(b)(3). We decline to consider this contention by the government in this appeal. Because the subpoena should have been quashed, we vacate the district court's order holding Torf in civil contempt for not complying with it.
 
 BACKGROUND
 A. Statutory Background
 
 15
 The Resource Conservation and Recovery Act of 1976 ("RCRA"), as amended, 42 U.S.C. § 6901 et seq., established a "`cradle to grave' regulatory system overseeing the treatment, storage, and disposal of hazardous waste." United States v. MacDonald, 339 F.3d 1080, 1082 (9th Cir.2003). Hazardous waste may only be transported to, stored at, or disposed of at facilities in accordance with the statute. 42 U.S.C. § 6925(a). RCRA requires that records be maintained regarding the quantity, location, and storage of hazardous waste. Regulations issued pursuant to the Hazardous Materials Transportation Act of 1976 ("HMTA"), as amended, 49 U.S.C. §§ 5901-5927, also require that documentation regarding hazardous waste be kept. 49 C.F.R. Parts 100-185.
 
 
 16
 The Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. §§ 9601-9675, requires persons responsible for the release of hazardous waste to pay cleanup costs. CERCLA authorizes the EPA to undertake response actions itself, or to require (through administrative or judicial orders) the responsible parties to undertake the response action. Id. § 9606(a). Pursuant to this authority, the EPA regularly executes Administrative Consent Orders, by which potentially responsible parties agree to remove hazardous waste without admitting liability. To determine the need for a response action, CERCLA authorizes the EPA to issue Information Requests, which require a person to provide relevant information or documents relating to, inter alia, "[t]he identification, nature, and quantity of materials which have been or are generated, treated, stored, or disposed of ... or transported to" a facility as well as "[t]he nature or extent of a release or threatened release" of hazardous waste. Id. § 9604(e)(2)(A), (B).
 
 B. Factual Background
 
 17
 Ponderosa manufactured paint-related products until May 2000, when it sold most of its assets and inventory. The EPA and the Department of Justice contend that Ponderosa distributed unsold, leftover products to its employees for disposal, and that this resulted in unlawful transportation and disposal of hazardous substances.
 
 
 18
 In May 2000, after being notified by the EPA that it was under investigation, Ponderosa retained attorney John McCreedy. On May 31, 2000, McCreedy hired Torf "for the purpose of assisting him in preparing a legal defense on behalf of Ponderosa." Torf's duties included interviewing witnesses, sampling and testing paint products, investigating properties that might include hazardous waste, and other investigative tasks.
 
 
 19
 On June 12, 2000, the EPA submitted a CERCLA Information Request to Ponderosa. The request required Ponderosa to identify any materials generated, treated, stored, disposed of, or transported to or from its property. Ponderosa responded on July 3, 2000. According to McCreedy: In order to answer the Information Request, [he] conducted extensive interviews of former Ponderosa employees and [he] relied heavily on information obtained by Torf during the course of his inspections and interviews, and [he] relied upon those results to assist [Ponderosa] in assessing its legal rights and responsibilities.
 
 
 20
 Ponderosa informed the EPA that by responding to the Information Request it was not waiving protection under the work product doctrine.
 
 
 21
 On August 1, 2000, the EPA and Ponderosa entered into a Consent Order. Pursuant to that order, Ponderosa agreed (without admitting liability) to dispose of the potentially hazardous substances. Torf assisted Ponderosa in the cleanup effort. The Consent Order also required Ponderosa to provide access "to all records and documentation in [its] control that are related to the conditions at the Site and the actions conducted pursuant to this Order," to "preserve all documents and information relating to work performed under this Order or relating to hazardous substances found on or released from the Site" for ten years, and to make such documents and information available to the EPA upon request. However, the order also preserved Ponderosa's ability to invoke work product protection. The EPA does not dispute that Ponderosa fulfilled its obligations under the Information Request and the Consent Order.
 
 
 22
 On March 6, 2002, a grand jury investigating Ponderosa issued a subpoena to Torf for the production of "any and all records relating in any way to any work completed by you or your company concerning the disposal of waste material or any other material whatsoever from Ponderosa Paint ... from January 1, 2000 through the present." Ponderosa intervened and moved to quash the subpoena. The magistrate judge overseeing the grand jury proceedings granted the motion.[1] The government sought review by the district court, and that court reversed the magistrate judge's order. The district court concluded that the withheld documents were not covered by the work product doctrine because they would have been created even without the prospect of litigation. The district court held Torf in contempt for failing to produce the documents, but stayed its contempt order (or at least the monetary penalty) pending this appeal.
 
 STANDARD OF REVIEW
 
 23
 We review for abuse of discretion a district court's denial of a motion to quash a grand jury subpoena. United States v. Chen, 99 F.3d 1495, 1499 (9th Cir.1996). "A district court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Gerling Global Reinsurance Corp. v. Low, 240 F.3d 739, 743 (9th Cir.2001).
 
 DISCUSSION
 
 24
 The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." Admiral Ins. Co. v. United States District Court, 881 F.2d 1486, 1494 (9th Cir.1989). Such documents may only be ordered produced upon an adverse party's demonstration of "substantial need [for] the materials" and "undue hardship [in obtaining] the substantial equivalent of the materials by other means." Fed. R.Civ.P. 26(b)(3).
 
 
 25
 The Supreme Court has held that the work product doctrine applies to documents created by investigators working for attorneys, provided the documents were created in anticipation of litigation. United States v. Nobles, 422 U.S. 225, 239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). In reaching this conclusion, the Supreme Court stated:
 
 
 26
 At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.
 
 
 27
 Id. at 238-39, 95 S.Ct. 2160.
 
 
 28
 We have previously held that "to qualify for protection against discovery under [Rule 26(b)(3)], documents must have two characteristics: (1) they must be `prepared in anticipation of litigation or for trial,' and (2) they must be prepared `by or for another party or by or for that other party's representative.'" In re California Pub. Utils. Comm'n, 892 F.2d 778, 780-81 (9th Cir.1989) (quoting Fed.R.Civ.P. 26(b)(3)). Here, there is no question that Ponderosa's attorney, McCreedy, hired Torf to help him assess the company's civil and criminal liability. The EPA had already notified Ponderosa that it was under investigation for violating federal waste management laws, and McCreedy was hired to defend Ponderosa in impending legal proceedings. The government told McCreedy that it "will not provide your client with a covenant not to sue for criminal liability and civil or administrative liability for any federal statute other than CERCLA." In order for McCreedy to provide informed legal advice to Ponderosa, and to prepare for anticipated litigation, he needed the help of an investigator such as Torf. Since most of the documents were prepared by Torf exclusively "in anticipation of litigation," these "single purpose" documents clearly pass the two-part test articulated in California Public Utilities and are afforded protection under Rule 26(b)(3). California Public Utilities, 892 F.2d at 780-81.
 
 
 29
 In addition to these single purpose documents, some of Torf's documents were also prepared in compliance with the Information Request and the Consent Order, or were otherwise related to the cleanup of the CERCLA sites. We have not heretofore addressed the question whether protection under the work product doctrine may be extended to such "dual purpose" documents. As we consider whether such protection may be so extended, we join a growing number of our sister circuits in employing the formulation of the "because of" standard articulated in the Wright & Miller Federal Practice treatise. This formulation states that a document should be deemed prepared "in anticipation of litigation" and thus eligible for work product protection under Rule 26(b)(3) if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 Federal Practice & Procedure § 2024 (2d ed. 1994) ("Wright & Miller").[2]
 
 
 30
 The Second Circuit presented a comprehensive discussion of the "because of" standard in United States v. Adlman, 134 F.3d 1194 (2nd Cir.1998). At issue in Adlman was a memorandum prepared by an accountant and lawyer at Arthur Andersen & Co. to evaluate the tax implications of a proposed merger. The memorandum was drafted to assist the client in making a business decision, but also was prepared "because of" the almost certain prospect that the proposed merger would result in litigation with the Internal Revenue Service. The Second Circuit remanded the case to the district court to apply the Wright & Miller "because of" standard in resolving the issue of work product protection.
 
 
 31
 The "because of" standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]" Adlman, 134 F.3d at 1195. Here, there is no question that all of the documents were produced in anticipation of litigation. McCreedy hired Torf because of Ponderosa's impending litigation and Torf conducted his investigations because of that threat. The threat animated every document Torf prepared, including the documents prepared to comply with the Information Request and Consent Order, and to consult regarding the cleanup.
 
 
 32
 The government argues, however, that the withheld documents would have been created in substantially similar form in any event to comply with the Information Request and the Consent Order, and therefore are not protected by the work product doctrine. The government relies on language in Adlman which states: "the `because of' formulation ... withholds protection from documents ... that would have been created in essentially similar form irrespective of the litigation." Adlman, 134 F.3d at 1202. We do not view this language as eviscerating work product protection for the documents withheld in this case.
 
 
 33
 The question of entitlement to work product protection cannot be decided simply by looking at one motive that contributed to a document's preparation. The circumstances surrounding the document's preparation must also be considered. In the "because of" Wright & Miller formulation, "the nature of the document and the factual situation of the particular case" are key to a determination of whether work product protection applies. Wright & Miller § 2024 (emphasis added). When there is a true independent purpose for creating a document, work product protection is less likely, but when two purposes are profoundly interconnected, the analysis is more complicated.
 
 
 34
 Here, Ponderosa's response to the Information Request and its accession to the Consent Order were done under the direction of an attorney in anticipation of litigation. By cooperating with the EPA, Ponderosa sought to avoid litigation with the government. See United States v. Chapman, 146 F.3d 1166, 1175 (9th Cir. 1998). Having chosen to pursue a criminal investigation, the government now seeks to capitalize on Ponderosa's earlier cooperation and obtain all of Torf's documents pertaining to the disposal of Ponderosa's waste material. The withheld documents, however, just like the others, were prepared by Torf, at least in part, to help McCreedy advise and defend Ponderosa in anticipated litigation with the government. Thus, the withheld documents fall within the broad category of documents that were prepared for the overall purpose of anticipated litigation.
 
 
 35
 To the extent that Adlman suggests there is no work product protection when, viewed in isolation of the facts of the case, a document can be said to have been created for a nonlitigation purpose, we believe the better view is set forth in two Seventh Circuit cases. In the first, In re Special September 1978 Grand Jury, 640 F.2d 49 (7th Cir.1980) ("Special September"), the court extended work product protection to materials that were produced both in anticipation of litigation and for the filing of Board of Elections reports required under state law. Work product protection was proper because, by the time the law firm's client received the Board's request for the required reports, the client had already received a subpoena from a federal grand jury. The so-called "independent" purpose of complying with the Board's request was grounded in the same set of facts that created the anticipation of litigation, and it was the anticipation of litigation that prompted the law firm's work in the first place.
 
 
 36
 In the later case, United States v. Frederick, 182 F.3d 496, 501-02 (7th Cir.1999), the Seventh Circuit held that "a dual-purpose document — a document prepared for use in preparing tax returns and for use in litigation — is not privileged; otherwise, people in or contemplating litigation would be able to invoke, in effect, an accountant's privilege, provided that they used their lawyer to fill out their tax returns."
 
 
 37
 Frederick does not discuss or distinguish Special September, but the two cases can be reconciled by the extent to which the so-called independent purpose is truly separable from the anticipation of litigation. In Frederick, at issue were accountants' worksheets, albeit prepared by a lawyer, in preparation of his clients' tax returns. Although his clients were under investigation (which the court acknowledged was a "complicating factor"), work product protection was ultimately inappropriate because tax return preparation is a readily separable purpose from litigation preparation and "using a lawyer in lieu of another form of tax preparer" does nothing to blur that distinction. Frederick, 182 F.3d at 501. In Special September, on the other hand, the materials used to prepare the Board of Elections reports were compiled by lawyers and were necessarily created in the first place because of impending litigation.
 
 
 38
 Similarly here, by hiring McCreedy who in turn hired Torf, Ponderosa was not assigning an attorney a task that could just as well have been performed by a non-lawyer. The company hired McCreedy only after learning that the federal government was investigating it for criminal wrongdoing; a circumstance virtually necessitating legal representation. Torf assisted McCreedy in preparing Ponderosa's defense. He also acted as an environmental consultant on the cleanup. Although in that capacity he could have been retained by Ponderosa directly, this circumstance does not preclude the application of the work-product privilege to documents produced in that capacity, if the documents were also produced "because of" litigation. The challenged documents were prepared under the direction of McCreedy, who was providing legal advice to Ponderosa in anticipation of the impending litigation.
 
 
 39
 We conclude that the withheld documents, notwithstanding their dual purpose character, fall within the ambit of the work product doctrine. The documents are entitled to work product protection because, taking into account the facts surrounding their creation, their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole.
 
 
 40
 The government contended in proceedings before the magistrate judge, as it does in its brief filed with this court, that it has a substantial need for the withheld documents and that it would incur undue hardship in obtaining substantially equivalent information. See Fed.R.Civ.P. 26(b)(3). Ponderosa responded to these arguments before the magistrate judge, asserting that it had provided the government with documents pertaining to the applicable sites pursuant to the Information Request and Consent Order, and the government's representatives were present at those sites on several occasions. The magistrate judge resolved the dispute in favor of Ponderosa, ruling that the government had "not shown or demonstrated substantial need, hardship or unavailability necessary to overcome the qualified immunity of work product." The government did not object in the district court to that ruling.
 
 
 41
 The failure to object in the district court to a magistrate judge's finding of fact waives a challenge to that finding. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir.1998). The failure to object to a magistrate judge's "pure" legal conclusion, however, may not. Id. "Rather, a failure to object to such a [pure legal] conclusion `is a factor to be weighed in considering the propriety of finding waiver of an issue on appeal.'" Id. quoting Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir.1991).
 
 
 42
 As in Turner, the magistrate judge's ruling in this case involves factual as well as legal determinations. The ruling defies classification as either a purely factual finding or a purely legal conclusion. What is clear, however, is that the ruling explicitly sets forth the magistrate judge's decision rejecting the very arguments the government now wishes to make, and reciting the facts upon which the magistrate judge's decision is based. What is also clear is that, with this decision in hand, the government eschewed presenting to the district court any contention of substantial need or undue hardship. Instead, it framed the issue as limited to whether the work product doctrine would protect a document if it were generated for a purpose other than litigation. The government stated:
 
 
 43
 In sum, a proper analysis as to the withheld documents must be conducted on a document by document basis. If the document would not have been generated `but for' litigation, it is privileged. However, if it was generated for purposes other than litigation, even though litigation may have been a `real possibility', it must be disclosed. Government's motion for de novo review of the magistrate court's order, filed in the district court Nov. 1, 2002, at 7 (emphasis added).
 
 
 44
 In view of the foregoing, we decline to consider the government's contention made in its brief filed with this court, but not presented to the district court, that it has a substantial need for the withheld documents and that it would incur undue hardship in obtaining substantially equivalent information.
 
 CONCLUSION
 
 45
 Because the withheld documents are protected from disclosure by the work product doctrine, we reverse the district court's order denying the motion to quash, and vacate the district court's order holding Torf in civil contempt. We also remand to the district court to consider whether the documents on which the magistrate judge deferred ruling were properly withheld.
 
 
 46
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 The magistrate judge deferred ruling on certain documents. We express no opinion on these documents
 
 
 [2]
 While not always discussed in the context of dual purpose documents, this formulation has been adopted inState of Maine v. U.S. Dep't of Interior, 298 F.3d 60, 68 (1st Cir.2002); Montgomery County v. MicroVote Corp. 175 F.3d 296, 305 (3rd Cir.1999); Logan v. Commercial Union Ins. Co., 96 F.3d 971, 976-77 (7th Cir.1996); PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP, 305 F.3d 813, 817 (8th Cir. 2002); and E.E.O.C. v. Lutheran Social Services, 186 F.3d 959, 968 (D.C.Cir.1999).