Graydon KLEE, Plaintiff,

v.

WHIRLPOOL CORP., et al., Defendants.

No. 05–CV–2227–WQH (JMA).

United States District Court,
S.D. California.

Dec. 27, 2006.

David Christopher Sullivan, Golper Sullivan and Rivera, San Diego, CA, for Plaintiff.

Christopher J. Daniels, Nelson Mullins Riley and Scarborough, Columbia, SC, Patricia Pichon Hollenbeck, Duane Morris, San Diego, CA, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND MOTION TO STRIKE EXPERT DISCLOSURE

JAN M. ADLER, United States Magistrate Judge.

Defendants Whirlpool Corporation ("Whirlpool") and Sears, Roebuck and Company ("Sears") (hereinafter collectively referred to as "Defendants") seek a protective order preventing Plaintiff Graydon Klee ("Plaintiff") from seeking any discovery from Gary Monk, and an order striking Plaintiff's expert disclosure of Mr. Monk. The parties have submitted letter briefs to the Court. For the reasons set forth below, **IT IS HEREBY ORDERED** that Defendants' motion for protective order is **DENIED,** and Defendants' motion to strike Plaintiff's expert disclosure of Mr. Monk is **DENIED.**

## I. *CASE BACKGROUND*

Plaintiff purchased a refrigerator from Sears which was manufactured by Whirlpool. (Compl. at 4; Defs.' Br. at 1.) Plaintiff alleges that the refrigerator was defective, and that as a result of the defect, a fire started inside the refrigerator and spread to the rest of Plaintiff's home, causing extensive damage to Plaintiff's property. (Compl. at 4.) The fire occurred on August 10, 2004. (*Id.*)

On September 14, 2004, Helmsman Management Services ("Helmsman"), the third party claims administrator for Sears, wrote Plaintiff a letter confirming its understanding that Plaintiff was "presenting a product liability claim associated with the purchase of a refrigerator at Sears." Defs.' Br., Ex. A. The letter explained that Helmsman had forwarded Plaintiff's claim to the manufacturer, Whirlpool, for handling. Helmsman enclosed a document entitled "Sears Product Liability Claims Process" with the letter. *Id.* That document contains, *inter alia,* the following information:

**Is Sears or Helmsman responsible for the damages related to your claim?**

If a claim is made associated with a product sold by Sears, the loss is referred to the manufacturer who informs their insurance carrier or third party administrator to evaluate the claim and to determine if the product manufacturer is legally liable for the damages claimed.

*Id.* Helmsman also sent a letter to Whirlpool dated September 14, 2004 in which it tendered the "complete defense and indemnification of Sears" to Whirlpool. Pl.'s Br., Ex. 4.

Additionally, on September 14, 2004, Whirlpool sent Plaintiff a letter. This letter, signed by a Claims Specialist, states the following:

We have received notice from Sears' insurance carrier, Helmsman Management Services, that you have reported a loss as a result of using a product that may have been manufactured by Whirlpool Corporation.

We are initiating an immediate investigation … If our investigation determines a manufacturing defect was not the cause, we will advise you immediately and will return the file to Helmsman Insurance for further handling. Otherwise, we will attempt to resolve your claim as quickly and as fairly as possible.

Pl.'s Br., Ex. 2.

Subsequent to these letters, Sears and/or Whirlpool sent three different experts to Plaintiff's home: Gary Monk, a cause and origin expert hired by Sears, through Helmsman; Paul Beauchamp, a cause and origin expert hired by Whirlpool; and Carl Nielsen, an electrical engineer. Pl.'s Br. at 3; Defs.' Br. at 2. According to Plaintiff, Mr. Monk conducted his inspection in October 2004. Pl.'s Br. at 4.[1] Mr. Monk was employed by Unified Investigations at the time of his inspection. Defs.' Br. at 2. In his deposition in this case, Plaintiff testified that Mr. Monk determined during his inspection that the fire had originated inside the refrigerator. Klee Dep., Pl.'s Br., Ex. 6 at 112.

1. Defendants' brief contains no mention of the    date of Mr. Monk's investigation.

A letter to Plaintiff from a Whirlpool representative dated October 8, 2004 advised:

> Your property damage claim has been assigned to me for further handling. We are undertaking an investigation into this matter. I have requested that a cause and origin investigator contact you to arrange an inspection of the fire scene. Once that is completed, we will assign an engineer to inspect the refrigerator. Also, I have arranged for an independent loss adjusting company to inspect the damaged property and prepare a damage estimate. You should be hearing from them in the near future.
>
> Once we have completed our investigation, we will contact you regarding resolution of your claim.

Pl.'s Br., Ex. 3.

By letter dated November 2, 2004, Liberty Mutual, insurer for Sears, informed Plaintiff, "As we discussed earlier today, we are unable to commit to paying any of your expenses related to this loss at this point, as we have not completed our liability investigation yet." Pl.'s Br., Ex. 5; Defs.' Br., Ex. A.

A letter dated November 16, 2004 from a Whirlpool representative to Plaintiff stated the following:

> I received your message of November 10, 2004 regarding the arrangements for the forensic inspection of your refrigerator. I regret that we were unable to reach a satisfactory agreement for the inspection of the product. Whirlpool and Sears were attempting to make these arrangements as a courtesy to you and in an effort to move this matter along. We are under no obligation to make these arrangements, nor are we responsible for providing you with transportation and lodging. The responsibility for proving your claim lies with you. Therefore, it would be customary for you to have a representative arrange for and participate in testing of the product. As we discussed previously, our cause and origin investigator did not believe that the area of fire origin was at the refrigerator. If you intend to pursue a claim against Whirlpool or Sears in the future, you have

a duty to preserve the product in an unaltered state and allow us to participate in a forensic examination and testing of the refrigerator. Additionally, we request that we be notified prior to demolition of the fire scene in the event we wish to participate in further analysis of the scene that may be destructive in nature.

Defs.' Br., Ex. A.

On November 25, 2004, Plaintiff wrote a letter in response to the above letter, which provides in relevant part:

> Regarding 'cause & origin' experts opinion and his explanation is understandable as it puts the issue of origin to rest in your mind in favor of your company. However in court will all facts, before a jury of reasonably intel[l]igent people the illogical flow of his theory would efferve[sce] like a shaken warm soda extinguishing your flame of hope to convince those 12 reasonab[l]e people that the cause of the inferno was external to the unit. Remember all professionals, including Oceanside Fire Dept concluded the refrigerator was burnt from inside and was the source of the blaze.

Defs.' Br., Ex. A.

According to Plaintiff, his claim was denied in December 2004 after the refrigerator was inspected by Whirlpool's engineers on December 8, 2004. Pl.'s Br. at 4.[2] Plaintiff filed a Complaint in the Superior Court of California, County of San Diego, on or around October 19, 2005. (Compl. at 1.) Defendants removed the action to this Court on December 6, 2005. [Doc. No. 1.]

On July 14, 2006, Plaintiff subpoenaed Mr. Monk to testify at a deposition scheduled for August 25, 2006. This deposition was subsequently taken off calendar. Defs.' Br. at 2. In his expert disclosures served on August 18, 2006, Plaintiff identified Mr. Monk as a cause and origin expert who "may be subpoenaed by the Plaintiff to testify regarding the opinions he formed following his investigation." *Id.* On October 23, 2006, Defendants received a deposition subpoena for Mr. Monk from Plaintiff. *Id.* Plaintiff also served a records subpoena on Unified Investigations,

---

**2.** Defendants' brief does not provide the date that Plaintiff's claim was denied.

Mr. Monk's employer at the time of his investigation. *Id.*

Defendants now seek a protective order preventing Plaintiff from seeking any discovery from Mr. Monk, via either deposition of Mr. Monk or via subpoena to Unified Investigations, and seek an order striking Plaintiff's expert disclosure of Mr. Monk. Defendants argue that Mr. Monk constitutes "an expert who was retained or specially employed in **anticipation of litigation** but who will not testify at trial, within the meaning of Rule 26(b)(4)(B)" of the Federal Rules of Civil Procedure. Defs.' Br. at 2 (emphasis in original).

## II. *LEGAL STANDARDS*

### A. **Rule 26(b)(4)(B)**

Subdivision (b)(4) of Rule 26 of the Federal Rules of Civil Procedure addresses the discovery of information, including facts and opinions, obtained by a party from an expert. The subdivision deals separately with those experts whom the party expects to call as trial witnesses [subdivision (b)(4)(A)], and with those experts who have been retained or specially employed by the party but who are not expected to be witnesses at trial [subdivision (b)(4)(B)]. Fed.R.Civ.P. 26 Advisory Committee Notes, 1970 Amendment.

■ Rule 26(b)(4)(B) provides as follows:

A party may ... discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only ... upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Fed.R.Civ.P. 26(b)(4)(B). The purpose of this rule is to protect trial strategy, prevent one party from "having a free ride at the expense of the other party", and to "promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation." *FMC Corp. v. Vendo Co.,* 196 F.Supp.2d 1023, 1048 (E.D.Cal.2002) (citations omitted); *see also Durflinger v. Artiles,* 727 F.2d 888, 891 (10th Cir.1984).

■ "Rule 26(b)(4)(B) by its very terms applies only to facts known and opinions held by experts ... acquired or developed in anticipation of litigation. Hence, that subdivision does not apply to facts known or opinions held which were not acquired or developed in anticipation of litigation." *Barkwell v. Sturm Ruger Co., Inc.,* 79 F.R.D. 444, 446 (D.Alaska 1978) (quotations and citations omitted). "[T]he subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness." Fed.R.Civ.P. 26 Advisory Committee Notes, 1970 Amendment.

### B. **"Anticipation of Litigation"**

■ "Anticipation of litigation" has been defined in the Ninth Circuit as preparation of a document "because of the prospect of litigation." *Fru–Con Constr. Corp. v. Sacramento Mun. Util. Dist.,* 2006 WL 2050999, at *3 (E.D.Cal. July 20, 2006) (citing *In re Grand Jury Subpoena (United States v. Torf),* 357 F.3d 900, 908 (9th Cir.2004)). The "because of" standard provides that a document should be deemed prepared "in anticipation of litigation" if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Subpoena,* 357 F.3d at 907 (citation omitted). "The 'because of' standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation.'" *Id.* at 908 (citation

omitted).[3]

## III. DISCUSSION

■ According to Defendants, Sears and Whirlpool each hired a cause and origin expert to investigate Plaintiff's claim. Recognizing that only one cause and origin expert is necessary, Defendants have elected not to use Mr. Monk in the defense of this case. Defs.' Br. at 2. Defendants argue that any report or opinion of Mr. Monk was prepared in anticipation of litigation and therefore, under Rule 26(b)(4)(B), Plaintiff must make a showing of "exceptional circumstances" in order to compel discovery from Mr. Monk. Defendants contend that several of the letters relating to Plaintiff's loss, summarized above, provide support for their assertion that Mr. Monk's report was prepared "in anticipation of litigation," rather than for ordinary business purposes. Defs.' Br. at 3.

■ "The investigation and evaluation of claims is part of the regular, ordinary and principal business of insurance companies." *Fine v. Bellefonte Underwriters Ins. Co.*, 91 F.R.D. 420, 422 (S.D.N.Y.1981). "It is ... well established that insurance companies have an independent obligation to review and follow up on claims, and their reports are thus not protected, although they are usually prepared with an eye toward litigation." *Fru-Con*, 2006 WL 2050999, at *4 fn. 3 (citing *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655 (S.D.Ind.1991)). In view of an insurance company's ordinary business and independent duty to investigate and evaluate claims, it is evident that Sears, through Helmsman, would have conducted a "cause and origin" investigation into Plaintiff's fire even if there was no prospect of litigation. "[I]t is reasonable to assume that a reasonable insurer would make a claims decision

only after it possessed the minimum amount of information it required to make that decision." *Stout v. Illinois Farmers Ins. Co.*, 150 F.R.D. 594, 605 (S.D.Ind.1993). Accordingly, it can be presumed that "documents which were produced by an insurer for concurrent purposes before making a claims decision would have been produced regardless of litigation purposes...." *Id.* Thus, it is apparent that Mr. Monk's report and opinion would have been requested and generated even if litigation was not anticipated.

■ The materials submitted to the Court—including those submitted by Defendants—support a finding that Mr. Monk's investigation occurred prior to the anticipation of litigation in this matter. Indeed, there is nothing in the letters to suggest that litigation was anticipated in October 2004, when Mr. Monk conducted his investigation. Rather, the letters demonstrate that Sears, Whirlpool and/or their insurers were still investigating Plaintiff's claim in October 2004 (and, in fact, in November 2004),[4] and that Mr. Monk's inspection of Plaintiff's premises was part of that investigation. Generally, documents and reports produced by or at the request of an insurer before arriving at a claims decision which consist of information reasonably related to the evaluation of a claim are presumed to have been produced or used for claims evaluation, not for litigation preparation. *Stout*, 150 F.R.D. at 599 (*citing Harper*, 138 F.R.D. at 663–64). "Normally, only after the insurance company makes a decision with respect to the claim, will it be possible for there to arise a reasonable threat of litigation so that information gathered thereafter might be said to be acquired in anticipation of litigation." *Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Cos.*, 123 F.R.D. 198, 202 (M.D.N.C.

---

**3.** While *In re Grand Jury Subpoena* addressed the work product doctrine, the key issue for the court was whether a document should be protected from discovery if it has both a litigation purpose and a nonlitigation purpose. The methodology used by the Ninth Circuit in that case is thus appropriately applied to this matter. *See, e.g., Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508 (N.D.Ill.2005) (applying reasoning set forth in *In re Grand Jury Subpoena* to determine whether document was created in "anticipation of litigation" pursuant to Rule 26(b)(4)(B)).

**4.** The Court does not find that Plaintiff's reference to "jury" and "12 reasonable people" in his November 25, 2004 letter alone constitute evidence of the anticipation of litigation. Rather, Plaintiff appears to have used those terms to express his disagreement with the apparent findings of Whirlpool's investigator. In any event, this letter was written *after* Mr. Monk's investigation, which took p lace in October 2004.

1988); *see also Harper,* 138 F.R.D. at 663–64 (finding that litigation is not sufficiently anticipated before an insurer arrives at a claims decision). It is evident from the letters submitted to the Court that a claims decision had not been made as of the time of Mr. Monk's investigation in October 2004, nor even as of November 2004.

■ As Plaintiff observes, Defendants are essentially asking the Court to simply assume that because Mr. Monk was hired to investigate Plaintiff's claim, it was done in preparation for litigation. Pl.'s Br. at 2. However, "[a]n insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate and make a decision with respect to claims made on it," nor can an insurance company "in good faith contend that there is a reasonable probability of litigation with respect to every claim submitted to it." *Pete Rinaldi's Fast Foods,* 123 F.R.D. at 202. Defendants have not demonstrated that its retention of Mr. Monk to investigate the cause and origin of the fire at Plaintiff's residence was "in furtherance of a sufficiently identifiable resolve to litigate, rather than a more or less routine investigation of a possibly resistible claim" by an insurer. *See Fine,* 91 F.R.D. at 422–23. It cannot fairly be said that Mr. Monk's investigation was conducted because of the prospect of litigation, nor can it be said that Mr. Monk's report and opinions were created "because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation." *In re Grand Jury Subpoena,* 357 F.3d at 907–08. Rather, it is the Court's view that Mr. Monk's report and opinions would have been created as part of the normal claims evaluation process notwithstanding the litigation that eventually ensued in this matter.

In sum, Defendants have put forth no evidence that Sears, vis-a-vis Helmsman, was doing anything other than investigating Plaintiff's demand for coverage of his fire loss at the time it retained Mr. Monk. The communications between Plaintiff, Sears/Helmsman, and Whirlpool, individually and collectively, demonstrate that in October 2004 (and, in November 2004), Sears and Whirlpool were still conducting their investigations of Plaintiff's claim, and there was not yet an anticipation of litigation. *See Fairbanks v. American Can Co., Inc.,* 110 F.R.D. 685, 688 (D.Mass.1986) (considering timing of preparation of reports in determining whether reports were prepared in anticipation of litigation); *see also B.F.G. of Illinois, Inc. v. Ameritech Corp.,* 2001 WL 1414468, at *3 (N.D.Ill.2001) ("Determining what is 'prepared in anticipation of litigation' has both a temporal and causation element.").

■ The Court accordingly concludes that Mr. Monk's reports and opinions were not prepared in anticipation of litigation. Because Rule 26(b)(4)(B) is therefore not applicable, Mr. Monk is treated as an "ordinary witness" (*see* Fed.R.Civ.P. 26 Advisory Committee Notes, 1970 Amendment) and the governing rule is Rule 26(b)(1). This rule permits "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party .... " Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* There is no doubt that Mr. Monk possesses information relevant to this case, and Defendants have not established that the information is privileged. Therefore, Plaintiff is entitled to discovery from Mr. Monk pursuant to Rule 26(b)(1). *See, e.g., Grinnell Corp. v. Hackett,* 70 F.R.D. 326, 332 (D.R.I.1976) ("There is absolutely nothing in the wording of Rule 26 to indicate that facts or opinion held by experts and not acquired for the purpose of preparing for litigation cannot be freely discovered under 26(b)(1). . . . ").

■ With respect to Plaintiff's expert disclosure of Mr. Monk, the practical effect of a Rule 26(a)(2) disclosure of expert testimony is to provide opposing parties "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed.R.Civ.P. 26 Advisory Committee Notes, 1993 Amendments. Thus, Plaintiff's inclusion of Mr. Monk in his expert disclosures does not result in any prejudice to Defendants, but rather places Defendants on notice

that Plaintiff intends to rely on Mr. Monk's testimony at trial. The scope and extent of any testimony to be given by Mr. Monk at trial, as well as the characterization of Mr. Monk as either an expert or percipient witness, shall be addressed by the trial judge, if necessary.

## IV.  *CONCLUSION*

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' motion for protective order is **DENIED,** and Defendants' motion to strike expert disclosure is **DENIED.**

**IT IS SO ORDERED.**