Peter **MARCEAU**; Jon Bodine; Rhonda McKinney; Brian Pine; Kathryn Smith, Plaintiffs,

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS (IBEW)** Local 1269; Dex Media, Inc.; Qwest Communications International, Inc.; Karen Ortega–Matson; Philip Wheeler, Defendants.

No. CV 05–02874–PHX–MHM.

United States District Court, D. Arizona.

Oct. 17, 2007.

---

Francis J. Burke, Lawrence Allen Katz, Nicole Ann Miller, Steven Dean Wheeless, Steptoe & Johnson LLP, Phoenix, AZ, John R. Martin, Milton L. Chappell, National Right to Work Legal Defense Foundation Inc., Springfield, VA, for Plaintiffs.

Duane B. Beeson, Beeson Tayer & Bodine, Oakland, CA, Gerald Barrett, Ward Keenan & Barrett PC, Charles A. Blanchard, Colin Patrick Ahler, Perkins Coie Brown & Bain PA, Donald Roy Gilbert, Fennemore Craig PC, Isabel Mary Humphrey, Randall S. Yavitz, Hunter Humphrey & Yavitz PLC, Phoenix, AZ, L. Norton Cutler, Jr., Perkins Coie LLP, Denver, CO, for Defendants.

## ORDER

DAVID K. DUNCAN, United States Magistrate Judge.

This Order addresses corporate Defendant Dex Media's assertion of the attorney-client privilege and work-product immunity with respect to what the parties variously refer to as the Barrett & Moss Report (Plaintiffs' title) or the Moss & Barrett audit (Corporate Defendant's title) (referred to hereinafter as the "Report"). The Court conducted an in-camera, ex parte review of this document and provided the parties with the opportunity to request oral argument. No party having requested such argument and the Court believing such argument unnecessary for its decision, this Order now issues.

The Report is formally titled "DEX MEDIA, INC. REPORT ON AUDIT OF PHOENIX OPERATIONS CONDUCTED BETWEEN APRIL 28, 2004 AND NOVEMBER 20, 2004". The Report is bates numbered DEX2002DOC00728–DEX2002DOC01113 and is composed of 59 pages of text with the remaining pages containing "NOTES TO PHOENIX AUDIT REPORT". Each of the text pages contains the additional appellations "DRAFT: 11/28/2004 2:44 PM—JMC" and "ATTORNEY WORK PRODUCT ATTORNEY CLIENT PRIVILEGED". Part B sets forth the "PURPOSE OF THE AUDIT":

> Because of the number of serious allegations relating to business processes and employer relations in the Phoenix office, the Company commissioned an audit to determine whether (a) the allegations of manipulation of business processes by sales representatives, and (b) the domination of office procedures by union adherents to their advantage and to the disadvantage of non-union employees, were accurate or unfounded. The auditors were further directed to make recommendations regarding appropriate corrective measures. The auditors were not charged with seeking out information for purposes of employee discipline and therefore no employees are identified by name in the text of this report, other than management personnel and where required by the context.

Report at p. 3. Part A of the Report, "BACKGROUND OF THE AUDIT", explains that the Report followed a long history of allegations of "account manipulation" in the Phoenix sales office. The original allegations in 1994 are described as having "created a great deal of consternation and sensitivity among the employees and managers in the Phoenix office." Report at p. 2. These account manipulation issues arose again in 2003 with allegations of unfair labor practices which were, according to the Report, dismissed or withdrawn by the time the audit was undertaken. The Report summarizes this history as follows:

> There is an atmosphere of extreme distrust that exists between employees, managers, union officials and union members in the Phoenix office. This has lead to a situation where employees are checking on each other routinely, taping Company conducted meetings, and spending a great

deal of their time putting spin and slant on events that are occurring within the office to substantiate that managers and other employees are engaging in wrong-doing to the detriment of other employees.

*Id.* at p. 3.

■ The attorney-client privilege protects from disclosure communications between an attorney and client for the purpose of obtaining legal advice. *U.S. v. Martin,* 278 F.3d 988, 999 (9th Cir.2002). The Court has quoted at some length from the prefatory statements of the Report because they raise the question of whether this report was prepared for the purpose of obtaining legal advice, or whether it was prepared for the business purpose of addressing issues of continuing concern to management. The fact that attorneys were retained to prepare the Report and that the Report is marked as an attorney-client privileged document are not dispositive of the issue. Rather what controls is the purpose of the activity. Insight to this purpose is drawn from the Report itself which professes a purpose other than the procurement of legal advice. This other-than-legal-advice purpose is also articulated by the general counsel who wrote in a March 30, 2005 letter: "The purpose of the audit, as was defined for the auditors, was not to reward nor to punish anyone. Its purpose was to examine the policies and practices to determine if they were subject to abuse and make recommendations for changes if warranted. The auditors were also asked to review claims of favoritism that might be occurring in that office." This particular letter also makes a declaration inconsistent with the assertion of the privilege: "If you attended the readout on the audit which was conducted during the week of March 14, 2005, you already know much of the results of the audit."

■ The attorney-client privilege's cloak of secrecy is secured only through punctilious fidelity to its elements. If it is invoked to protect communications beyond those made for the purpose of obtaining legal advice, the privilege is lost. If the communications are shared beyond the attorney and the client, it is lost. The Corporate Defendant in a September 26, 2007 submission to the Court provided three evidentiary bases for the assertion of the attorney-client privilege and work-product immunity: 1) an email from Patricia Bradford, Senior Director Labor Relations/Human Resources, to an employee who had requested a copy of "the information that was discussed from the findings of the Labor Law Attorneys of Moss & Barrett" in which the employee is told "I am not able to provided a copy of the information as it was produced under attorney-client privilege"; 2) an "[u]ndated transcript of Plaintiff Kathryn Smith's interview by Moss & Barrett auditors"; and 3) the "March 30, 2005 letter from Frank Eichler, Senior Vice President and General Counsel for Dex Media, to plaintiff Rhonda McKinney." (The letter quoted above.) Corporate Defendant also cites *U.S. v. Chen,* 99 F.3d 1495 (9th Cir.1996), in support of the assertion of the privilege. *Chen* arose in the criminal law context of a grand jury subpoena compelling attorneys to testify regarding their client's alleged involvement in a tax evasion scheme. The government contended that where defendant's lawyers are involved in "business decision-making" there is no privilege. The Court summarily dispensed with the government's argument in large part it appears because the lawyers were not alleged to have been involved in the decision making but only in serving as spokespersons before government agencies. Thus the government's argument was a straw figure easily cast aside. *Chen* does not undercut the established principle that where the attorney develops what is predominantly business advice, no privilege applies. *U.S. v. ChevronTexaco Corp.,* 241 F.Supp.2d 1065, 1076 (N.D.Cal.2002).

■ More compelling than the Corporate Defendant's evidence and case citations was the Court's in-camera review of the Report. The text of the report concludes with 14 recommendations. The very first recommendation states "We believe that it would facilitate the quality of future operations in Phoenix [if the recommended action were taken]." Report at p. 54. This statement exemplifies the general nature of the audit as a tool for improving the business operations of the Phoenix unit. This conclusion is expressed by the Report itself in the preamble to its 14

recommendations: "One of the objectives of the audit was to develop appropriate recommendations where warranted to address areas of potential concern and to improve operations of the Phoenix office." *Id.* The comingling of the purposes of the audit between identifying improved business operations and obtaining legal advice to this degree vitiates the protection of the attorney-client privilege.

Moreover, not one of the 14 recommendations required the analysis and skills of one trained in the law. They are more in the nature of business management recommendations that could readily be made by one schooled and trained exclusively in business management. See *Oil Chemical and Atomic Workers Intern. Union (OCAWIU) v. American Home,* 790 F.Supp. 39, 41 (D.Puerto Rico1992) (considering whether the task performed by the lawyer could have been performed by a non lawyer or whether the skill or expertise of a lawyer was required).

 With respect to the assertion of the work-product immunity, the elements of that immunity are not satisfied as there is insufficient evidence that the Report was prepared in anticipation of litigation. "[A] document should be deemed prepared 'in anticipation of litigation' and thus eligible for work product protection under Rule 26(b)(3) if 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation.'" *In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management),* 357 F.3d 900, 907 (9th Cir.2004) *citing* Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 *Federal Practice & Procedure* § 2024 (2d ed.1994) (emphasis added). Again, the in-camera review of the document reveals that this was an audit designed to study and propose solutions for on-going management issues facing the company. It is true that the past history of litigation supports the contention that litigation was anticipated, but in light of the history of the issues addressed in the Report it is reasonable to believe that the Report would have been prepared in the absence of anticipated litigation. In addition, the fact that litigation was not imminent tends to support the argument that the Report was not prepared in anticipation of litigation. *Home Ins. Co. v. Ballenger Corp.,* 74 F.R.D. 93, 101 (N.D.Ga. 1977). The audit was conducted between April 28, 2004 and November 20, 2004, and this matter was filed September 19, 2005. Finally, the Report's prefatory statements, findings, and recommendations make no reference to a fear of anticipated litigation.

The objections to production of the Report based upon assertion of the attorney-client privilege and work-product immunity are overruled. IT IS SO ORDERED.