**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellant,*

    v.

MARK RICHEY,
        *Defendant-Appellee,*

ALAN D. PESKY; WENDY PESKY;
FAWPEAS L.P.,
  *Defendant-Intervenors-Appellees.*

No. 09-35462

D.C. No.
1:08-cv-00452-EJL

OPINION

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted
October 8, 2010—Seattle, Washington

Filed January 21, 2011

Before: Sidney R. Thomas and Milan D. Smith, Jr.,
Circuit Judges, and Raner C. Collins, District Judge.*

Opinion by Judge Milan D. Smith, Jr.

---

*The Honorable Raner C. Collins, United States District Judge for the
District of Arizona, sitting by designation.

## COUNSEL

Kathleen E. Lyon, Attorney, U.S. Department of Justice, Tax Division, for plaintiff-appellant United States of America.

Justin C. Jones, Attorney, Portland, Oregon, for the defendants-appellees.

## OPINION

M. SMITH, Circuit Judge:

The Internal Revenue Service (IRS or Government) challenges the district court's ruling denying its motion to enforce a summons against Defendant-Appellant, Mark Richey, seeking production of an appraisal work file. The IRS contends that the district court erred when it found that the summons was not issued in good faith, and that the appraisal work file was protected by the attorney-client privilege and work-product doctrine.

We hold that the IRS summons was issued in good faith, and that the district court erred in finding that Richey's entire appraisal work file was protected by both the attorney-client privilege and the work-product doctrine. We therefore reverse and remand to the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Intervenors-Appellees Alan and Wendy Pesky (the Peskys or Taxpayers) owned general and limited partnership interests in FAWPEAS, an Idaho limited partnership. FAWPEAS, in turn, was the 50% owner of certain real property located in Ketchum, Idaho (the Property). In January 2002, the Peskys retained the law firm of Thornton Byron LLP (Thornton) to provide legal advice to them concerning the granting by

FAWPEAS of a conservation easement on the Property (the Easement). On March 7, 2002, the Peskys caused FAWPEAS to execute a conservation deed for the Property in favor of the Nature Conservancy. On May 7, 2002, Thornton retained Mark Richey, an MAI-certified appraiser, to provide "valuation services and advice with respect to the conservation easement." In response, Richey prepared an appraisal report to be filed with the Taxpayers' 2002 federal income tax return, and a work file concerning the value of the Easement.

Given their partnership interest in FAWPEAS, the Peskys claimed an approximately $200,000 charitable contribution deduction on their 2002 federal income tax return, stemming from their proportionate share of the alleged value of the Easement. The approximately $1.3 million bulk of the deduction was carried over on the Peskys' 2003 and 2004 federal income tax returns. Richey's appraisal report was attached to the Peskys' 2002 federal income tax return, as required by Treasury Regulation section 1.170A-13(c)(1). The appraisal report noted: "[T]his report may not include full discussion of the data, reasoning, and analyses that were used in the appraisal process to develop the appraiser's opinion of value. Supporting documentation concerning the data, reasoning, and analyses is retained in the appraiser's file."

On July 28, 2008, the IRS mailed a summons to Richey instructing him to appear before IRS Agent Shane Cole, and to provide testimony, documents, books, records, and information related to the services Richey provided to the Peskys. Asserting the protections of the attorney-client and work-product privileges, Thornton directed Richey not to comply with the summons and Richey followed Thornton's instructions. In October 2008, the Government filed a petition to enforce the summons. Agent Cole attached a declaration to the petition, stating that he was conducting an investigation of the Peskys' 2003 and 2004 federal income tax returns, had summoned Richey to inquire about the valuation of the Ease-

ment, and did not have the documents needed to determine the Peskys' correct tax liability.

In December 2008, the IRS issued a Notice of Deficiency to the Peskys, which disallowed any charitable deduction stemming from the Easement for the 2003 and 2004 federal income tax returns. The Peskys responded to the Notice of Deficiency by paying the assessment, interest, and penalties claimed by the IRS. On February 11, 2009, the district court granted the Peskys' motion to intervene in the Government's summons enforcement action against Richey. The district court also ordered Richey to show cause why he should not be compelled to comply with the summons. At the show cause hearing, the district court ordered the parties to provide supplemental briefing addressing whether the IRS investigation had closed as the result of the Peskys' agreement to pay the assessment, interest, and penalties claimed by the IRS in the Notice of Deficiency. On March 6, 2009, the district court issued a memorandum order quashing the summons. The IRS appeals the decision of the district court.

## STANDARD OF REVIEW AND JURISDICTION

We review the district court's summons-enforcement decisions for clear error. *David H. Tedder & Assocs., Inc. v. United States*, 77 F.3d 1166, 1168 (9th Cir. 1996). The district court's conclusion concerning whether "statements are protected by an individual attorney-client privilege is 'a mixed question of law and fact which this court reviews independently and without deference to the district court.' " *United States v. Graf*, 610 F.3d 1148, 1158 (9th Cir. 2010) (quoting *United States v. Ruehle*, 583 F.3d 600, 606 (9th Cir. 2009). We review de novo the district court's rulings on the scope of the attorney-client privilege. *Id.* The district court's factual findings are reviewed for clear error. *Id.* "A finding is clearly erroneous if it is illogical, implausible, or without support in the record." *Id.* (citing *United States v. Hinkson*, 585 F.3d 1247, 1261 (9th Cir. 2009) (en banc).

We apply the same standard of review for the work-product doctrine as for attorney-client privilege. *See, e.g.*, *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010). As such, whether documents are protected by the work-product doctrine is a mixed question of law and fact, reviewed independently and without deference to the district court. *See, e.g.*, *Graf*, 610 F.3d at 1158. We review de novo the district court's rulings on the scope of the work-product doctrine. *See id.* The district court's factual findings for work-product privilege are reviewed for clear error. *Hernandez*, 604 F.3d at 1100.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 26 U.S.C. § 7609(h)(1).

## DISCUSSION

### A.   Good Faith and the Summons

**[1]** The IRS is authorized by statute to inquire into tax liabilities. 26 U.S.C. § 7601. In order to ascertain "the correctness of any return," the IRS may issue a summons for records and documents from third parties in connection with a tax liability investigation. 26 U.S.C. § 7602(a). Summonses issued under Section 7602 must be served personally or left at the person's last and usual place of abode. 26 U.S.C. § 7603(a).

**[2]** To obtain enforcement of a summons, the Government has the initial burden of establishing a prima facie case showing that: (1) the investigation will be conducted for a legitimate purpose, (2) the inquiry is relevant to the purpose, (3) the information sought is not already within the IRS's possession, and (4) the administrative steps required by the IRS Code have been followed. *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *Ponsford v. United States*, 771 F.2d 1305, 1307 (9th Cir. 1985). "The government's burden is a slight one, and may be satisfied by a declaration from the investigating agent that the *Powell* requirements have been met."

*United States v. Dynavac, Inc.*, 6 F.3d 1407, 1414 (9th Cir. 1993).

**[3]** Once the government establishes a prima facie case, a party challenging the summons must show that the government is not entitled to use the court's process to enforce the summons. *Powell*, 379 U.S. at 58. A court will not enforce a summons if "an abuse would take place if the summons [was] issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Id.* It is a "heavy" burden to show an abuse of process or lack of good faith. *Fortney v. United States*, 59 F.3d 117, 120 (9th Cir. 1995).

The validity of a summons is normally tested as of the date of its issuance. *United States v. Cromer*, 483 F.2d 99, 101 (9th Cir. 1973). However, the court may inquire as to the reasons for the summons and may not permit its process to be abused in enforcing the summons. *Powell*, 379 U.S. at 58.

### 1.   The Government's Prima Facie Case

Generally, submitting "a declaration from the investigating agent that the *Powell* requirements have been met" is sufficient to establish a prima facie case. *Dynavac*, 6 F.3d at 1414. Here, IRS Agent Cole submitted a declaration that he was investigating the Peskys' tax liabilities, that he did not have the relevant appraisal work file, and that the administrative process was followed.

**[4]** Agent Cole's declaration was not wholly accurate. The administrative process was not completely followed because Richey was served by certified mail rather than by personal service. *See* 26 U.S.C. § 7603(a). Nonetheless, as the district court found, Richey had actual notice of the summons, there was no prejudice to the Taxpayers who timely intervened, and the Government acted in good faith when it tried to effect ser-

vice by certified mail. We agree with the reasoning of the Eighth and Fifth Circuits that substantial compliance with 26 U.S.C. § 7603(a)'s service requirements is sufficient if the IRS acted in good faith and there is no prejudice to the taxpayer.[1]

[5] In this case, the IRS's service error was clearly harmless. The minor service error was properly excused by the district court, and the Government satisfied its initial burden to establish a prima facie case in October 2008, with Agent Cole's declaration. Thereafter, the burden shifted to Richey and the Peskys to show that the Government acted in bad faith.

## 2.  Further Enforcement Actions

[6] The parties do not dispute that the summons was issued in good faith in October 2008. What changed, according to Richey and the Peskys, is that the Peskys agreed to the Notice of Deficiency in December 2008, and paid the required assessment, interest, and penalties. They buttress their claim on section 4.8.9 of an internal IRS manual, which provides that when a taxpayer agrees to an assessment and collection of the entire deficiency, "[u]pon receipt of a signed waiver or agreement, the following actions must be taken: . . . . Close the case agreed to Centralized Case Processing for assessment of the deficiency." Internal Revenue Manual § 4.8.9.19.3.2, *available at* http://www.irs.gov/irm/part4/irm_04-008-009-cont02.html (last accessed Nov. 22, 2010). Thus, they reason, since the audit was closed, the Government's continued efforts to enforce the summons were necessarily in bad faith.

---

[1] *See Mimick v. United States*, 952 F.2d 230, 232 (8th Cir. 1991) (requiring courts "to evaluate the seriousness of the violation under all the circumstances including the government's good faith and the degree of harm imposed by the unlawful conduct"); *United States v. Payne*, 648 F.2d 361, 363 (5th Cir. 1981) (holding that summons was valid even though there was a technical service violation because summons was not personally served); *see also Sylvestre v. United States*, 978 F.2d 25, 27-28 (1st Cir. 1992) (declining to bar enforcement of summons issued two days late).

The district court sided with Richey and the Peskys, explaining:

> [I]t seems any discovery to clarify the appraisal at this stage is no longer in good faith since the notice of deficiency has issued and the taxpayers have paid the taxes and penalties assessed. While the prima facie case for enforcement of the summons under *United States v. Powell et al[.]*, 379 U.S. 48 (1964)[,] is minimal, the IRS still has to provide some explanation of why the final appraisal report alone is insufficient to explain the appraiser's conclusion and why the IRS has an interest after the taxpayers have consented to the assessment which disallows the deduction calculated by the appraisal.

[7] We have not previously ruled whether an IRS summons initially issued in good faith can transmogrify into one issued in bad faith upon the taxpayer's consenting to a deficiency assessment. However, other circuits considering the issue have held in similar circumstances that there can be no showing of bad faith by the IRS in such circumstances unless there has been a predicate "final, irrevocable determination of the taxpayer's liability."[2] We are persuaded by the reasoning of the Second and Seventh Circuits, and we hold that under the facts of this case, continued enforcement of an IRS summons is proper where the Taxpayers' liability has not been finally determined and there is no other evidence in the record that the summons was issued for an improper purpose, such as to harass the Taxpayers. *See, e.g.*, *Powell*, 379 U.S. at 58. Here, the Peskys' tax liabilities had not been finally deter-

---

[2]*PAA Mgmt., Ltd. v. United States*, 962 F.2d 212, 217-18 (2d Cir. 1992) (adopting the reasoning in *Gimbel* in the context of partnership tax liability and holding that IRS still had investigative powers until final determination of tax liability); *United States v. Gimbel*, 782 F.2d 89, 93 (7th Cir. 1986) (enforcing summons where IRS issued notice of deficiency and taxpayer filed petition in Tax Court).

mined. The time period for the Peskys to file a petition with the Tax Court had not expired when the IRS sought enforcement of the summons. The Peskys further indicated that they would likely challenge the Notice of Deficiency and seek a refund. Moreover, even though the Peskys consented to the assessment, the IRS still had the ability to adjust the tax liability later, as noted on the assessment form the Peskys signed.

**[8]** Because the Peskys' tax liability could still change, even though the IRS's investigation had ostensibly concluded, the IRS had a legitimate reason to seek documentation essential to establishing the Peskys' tax liabilities. Thus, as long as the amount the Peskys allegedly owed to the IRS was subject to change, the IRS had a good-faith interest in obtaining the appraisal work file pursuant to the summons. We therefore conclude that Richey and the Peskys have not met their "heavy" burden of showing bad faith by the IRS, *Fortney*, 49 F.3d at 120, and that the summons is enforceable in accordance with its terms, which includes Richey's appearance before the IRS, unless other defenses are available to Richey and the Taxpayers.

## B.   Attorney-Client Privilege

**[9]** The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication. *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997). The attorney-client privilege exists where: "(1) [ ] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Graf*, 610 F.3d at 1156. Voluntary disclosure

of privileged communications constitutes waiver of the privilege for all other communications on the same subject. *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice.[3] If the advice sought is not legal advice, but, for example, accounting advice from an accountant, then the privilege does not exist. *Id.*

Here, Thornton hired Richey, at least in part, "to provide valuation services" in the form of an appraisal for the Easement. The IRS regulations require that the taxpayer provide a qualified appraisal for charitable deductions. 26 C.F.R. § 1.170A-13(c)(2)(A). The appraisal must include the method of valuation used to determine fair market value of the property and the "specific basis for the valuation, such as specific comparable sales transactions or statistical sampling . . . ." *Id.* at § 1.170A-13(c)(3)(ii)(I)-(K). Additionally, the appraisal must state that it was prepared for income tax purposes. *Id.* at § 1.170A-13(c)(3)(ii)(G).

Richey prepared the appraisal as required by Treasury Regulation section 1.170A-13(c)(1), so that the Peskys could claim the charitable deduction sought for the value of the Easement. *Id.* § 1.170A-13. The appraisal was attached to the Peskys' 2002 federal income tax return. The appraisal states that it is in compliance "with the substantiation requirements" under section 1.170A-13(c)(2). Appraisals conforming to IRS regulations are required to be based on the objective use of valuation information, such as the fair market value of other properties. *See id.* at § 1.170A-13(c)(3)(ii)(I)-(K). Richey cer-

---

[3]*See Smith v. McCormick*, 914 F.2d 1153, 1159-60 (9th Cir. 1990) (concluding that defendant's communication with her psychiatrist was protected up to the point of testimonial use of that communication). " 'What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining *legal* advice *from the lawyer*.' " *United States v. Gurtner*, 474 F.2d 297, 299 (9th Cir. 1973) (emphasis in original) (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961).

tified that the appraisal he prepared was "impartial" and "unbiased." Importantly, as part of the explanation for the methods and specific bases for the appraiser's opinion of value, the work file contained "supporting documentation concerning the data, reasoning, and analyses" for the appraisal report.

**[10]** Based on this record, any communication related to the preparation and drafting of the appraisal for submission to the IRS was not made for the purpose of providing legal advice, but, instead, for the purpose of determining the value of the Easement. Further, to the extent the files contain documents that were not communications, they are not protected by the attorney-client privilege. *Graf*, 610 F.3d at 1156. It is also significant that Richey and the Peskys did not make a specific proffer of what communications, if any, exist in the appraisal work file, that are allegedly the proper subject of the attorney-client privilege. *See, e.g.*, *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002) ("A party claiming the privilege must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted." (citing *United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir. 1977))). It was therefore clear error for the district court to conclude that the entire appraisal work file is protected by the attorney-client privilege. In addition, Richey remains obligated to appear before the IRS to testify about the non-privileged documents contained in the work file, as commanded by the summons.

## C.   Work-Product Doctrine

**[11]** The work-product doctrine protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)). The work-product doctrine covers documents or the compilation of materials prepared by agents of the attorney in preparation for litigation. *United States v.*

*Nobles*, 422 U.S. 225, 238 (1975). The work-product doctrine's protections are waivable. *Hernandez*, 604 F.3d at 1100.

To qualify for work-product protection, documents must: (1) be "prepared in anticipation of litigation or for trial" and (2) be prepared "by or for another party or by or for that other party's representative." *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf)*, 357 F.3d 900, 907 (2004). In circumstances where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the "because of" test is used. *Id*. Dual purpose documents are deemed prepared because of litigation if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Id*. In applying the "because of" standard, courts must consider the totality of the circumstances and determine whether the " 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.' " *Id*. at 908 (quoting *United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998)).

**[12]** Here, the district court erred by concluding that the entire work file was prepared in anticipation of litigation. Richey was hired to provide valuation services, and he prepared the appraisal report that the Peskys attached to their 2002 federal income tax return, as required by law. Had no appraisal report been attached to the Peskys' 2002 federal income tax return, the Taxpayers would have been ipso facto ineligible for any charitable deduction as a result of the contribution of the Easement. Had the IRS never sought to examine the Taxpayers' 2003 and 2004 federal income tax returns, the Taxpayers would still have been required to attach the appraisal to their 2002 federal income tax return. Nor is there evidence in the record that Richey would have prepared the appraisal work file differently in the absence of prospective litigation.

**[13]** Considering the totality of the circumstances, we cannot properly conclude that the appraisal work file "can be fairly said to have been prepared or obtained because of the prospect of litigation." *Torf*, 357 F.3d at 907-08. Thus, neither Richey nor the Taxpayers may properly invoke the work-product doctrine in protecting the contents of the appraisal work file.

## CONCLUSION

**[14]** In light of the above, we reverse and remand to the district court so the court can conduct an *in camera* examination of the materials summoned by the IRS in order to determine which data and materials, *if any*, are protected from disclosure by the attorney-client privilege, after applying the principles and conclusions discussed *supra*. Any materials not so protected should be ordered delivered to the IRS forthwith, in accordance with the terms of the summons. Additionally, Richey is required to appear personally before the IRS to give testimony in accordance with the summons.

**REVERSED AND REMANDED**.