**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 06 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| FEDERICO AGUILAR MURILLO; et al., | No. 12-16272 |
| Plaintiffs - Appellants, | D.C. No. 2:07-cv-02581-GMS |
| v. | |
| SERVICIOS AGRICOLAS MEX, INC.; et al., | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the District of Arizona
G. Murray Snow, District Judge, Presiding

Argued and Submitted March 10, 2014
San Francisco, California

Before: NOONAN, THOMAS, and BERZON, Circuit Judges.

Plaintiffs, farm workers with U.S. citizenship or lawful permanent residency,

appeal the district court's judgment denying their claims under the Migrant and

Seasonal Agricultural Worker Protection Act ("AWPA"). We affirm. Because the

parties are familiar with the history of this case, we need not recount it here. We

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

review questions of law de novo, *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1071 (9th Cir. 2012), and factual findings for clear error, *United States v. Richey*, 632 F.3d 559, 563 (9th Cir. 2011).

The AWPA provides, in relevant part, for protections for seasonal agricultural workers, like plaintiffs, and migrant agricultural workers. 29 U.S.C. § 1831. Pursuant to 29 U.S.C. § 1832(c), "[n]o farm labor contractor, agricultural employer, or agricultural association shall, without justification, violate the terms of any working arrangement made by that contractor, employer or association with any seasonal agricultural worker."

The H-2A program permits U.S. employers anticipating a shortage of available U.S. workers needed for agricultural jobs to apply to the U.S. Department of Labor ("DOL") for certification to hire non-immigrant foreign workers to perform the jobs on a temporary basis. *See* 8 U.S.C. 1188. Such arrangements are not permissible when U.S. workers' wages or working conditions would be adversely affected. 20 C.F.R. § 655.101(b).[1]

The applicable regulation, 20 C.F.R. § 655.103(d)(3), requires H-2A employers to work with the relevant state agency (in this case the Arizona

---

[1] C.F.R. references are to the April 2006 version of the C.F.R., as that was the version in effect at the time of the events at issue in this case.

2

Department of Economic Security ("DES")) in recruiting U.S. workers. That regulation is limited, however, by 20 C.F.R. § 655.105, which invests in the DOL the authority to specify the recruiting efforts that an applicant must make in order to comply with § 655.103.

Pursuant to § 655.105, the DOL required that defendant Servicios Agricolas Mex Inc. ("SAMI") "[c]ontact former U.S. employees, and solicit their return to the job." We assume for the purposes of this disposition, without deciding, that the DOL's requirement formed part of a "working arrangement" between the plaintiffs and SAMI.

Plaintiffs assert that SAMI did not comply with this requirement because SAMI did not contact U.S. workers who had harvested Marlin's groves from the San Luis *corralón* in prior years. SAMI acknowledges as much. Accordingly, SAMI did not document any such efforts in their filings with the DOL. Nevertheless, the DOL approved SAMI's H-2A applications. In other words, the DOL determined that SAMI had complied with the requirement to contact its former U.S. workers "and solicit their return to the job."

Plaintiffs contend that the DOL was unaware that SAMI did not contact its San Luis former workers, and that, had it been so aware, the DOL would have denied the application. But plaintiffs provide no evidence showing that SAMI's

filings were inaccurate, dishonest, or otherwise deficient. Even more importantly, there is no evidence that the DOL was ignorant of any aspect of SAMI's recruiting practices. Plaintiffs'argument is further undermined by the fact that SAMI worked closely with both the DOL and the DES throughout the recruitment process.

The DOL's conclusion is further supported by the facts on the ground. For example, the district court concluded as a factual matter that none of the plaintiffs applied to work at White Wing from the 2003–04 season through the 2006–07 season, even though they all lived within the area in which the relevant work had been advertised via radio, newspaper, and the state job service. Moreover, the district court did not credit the testimony that the plaintiffs would have been willing to pay for their own daily commute from San Luis to White Wing—a 90-mile commute that takes two to three hours to drive each way—and did credit testimony that some, if not all, workers recruited at San Luis would not live in housing at White Wing. In sum, the district court did not err in concluding that plaintiffs have not shown that SAMI failed to comply with the recruitment requirements, as "the job" it was offering was not the same one its San Luis employees had filled.

**AFFIRMED.**

4