Kenneth S. Hixson, Judge, concurring.
I concur with the majority that we must affirm in part and reverse in part. First, I agree with the majority's analysis that we must reverse the circuit court's order compelling Entergy to produce the two root-cause evaluation reports to Mr. Francis. Mr. Francis never served Entergy with any interrogatories or requests for production to formally seek the reports and therefore lacked standing to "join" Bigge's motion to compel. See Ark. R. Civ. P. 37(a)(2) (2017).
I must further agree with the majority that Entergy's argument that Bigge failed to comply with Arkansas Rule of Civil Procedure 26(c) is without merit and that Entergy failed to preserve its arguments regarding the evidence considered by the circuit court and that it was denied fair notice that the second root-cause evaluation report was also at issue.
Additionally, I agree that we must affirm the circuit court's order that compelled Entergy to disclose the root-cause evaluation reports to Bigge under these particular facts. However, I write this concurrence to further clarify my reasons for doing so. In this case, we are confronted with dual-purpose documents, i.e., the root-cause evaluation reports. One purpose of the documents was that the reports were prepared in anticipation of litigation. The second purpose of the documents was that the reports were prepared in the ordinary course of business in that the reports were required by the U.S. Nuclear Regulatory Commission (NRC) and Entergy's *373 own internal policies. Hence, we have dual-purpose documents, and the issue is whether these dual-purpose documents can be afforded protection under the attorney-work-product doctrine. It appears that neither Arkansas nor the Eighth Circuit has addressed the specific issues herein. However, the United States District Courts in Louisiana, Mississippi, Arizona, and Utah and the Ninth Circuit Court of Appeals have addressed similar issues, and those opinions contain pertinent insight.
There appears to be at least two somewhat different approaches to determine whether the attorney-work-product doctrine applies in a dual-purpose document case. The first approach is often referred to as the "primary motivating purpose" approach, and the second approach is often referred to as the "because of" approach. The affidavit filed by Entergy's attorney, Timothy Matthews, makes it clear that the two root-cause reports prepared by Entergy had dual purposes. First, the root-cause reports were ostensibly prepared in anticipation of litigation. Entergy received a demand letter from a plaintiff's attorney only four days after the accident. The affidavit also makes it clear that the root-cause reports were prepared because the NRC and its own internal policies and procedures required Entergy to prepare the root-cause reports to prevent future similar events.
The "primary motivating purpose" approach is adequately described in Galvan v. Miss. Power Co. , No. 1:10CV159-KS-MTP, 2012 WL 5873633 (S.D. Miss. Nov. 20, 2012). Mississippi Power Company (MPC) prepared a root-cause analysis to establish the facts and observations of an unidentified event. Id. In responding to a request for production of documents, MPC stated that a root-cause analysis existed, which was conducted at the behest of MPC's attorneys; however, MPC declined to deliver the analysis, citing the attorney-work-product doctrine. Id. The district court ultimately denied the motion for protective order by MPC and ordered the root-cause analysis to be delivered to Galvan. Id. The district court explained its reasoning as follows:
[T]he work-product doctrine does not apply to documents prepared in the ordinary course of business. In order for a document to be protected by the work-product doctrine, "litigation need not be necessarily imminent ... as long as the primary motivating purpose behind the creation of the document was to aid in possible litigation."
Galvan , 2012 WL 5873633, at *2 (internal citations omitted and emphasis added). The Galvan court then stated that "[b]ased on the limited information provided by MPC, the court is unable to determine whether the root cause analysis, or any other document withheld solely on the basis of work-product, was prepared primarily in anticipation of litigation or whether such documents were prepared in the ordinary course of business, and would have been prepared whether litigation was anticipated or not." Id.
The following excerpt from Galvan is of particular importance to this concurrence and to dual-purpose root-cause analysis cases:
In making this finding, the court in no way concludes that root cause analysis reports or conclusions are never protected by the work-product doctrine or the attorney-client privilege; in many cases they are protected from disclosure.... However, in this instance, based on the record before the court, MPC has failed to meet its burden of establishing that the root cause analysis should be protected from disclosure.
Id. at *2 (internal citations omitted).
This approach was also used by the U.S. District Court in Utah in *374 Chevron Pipe Line Company v. Pacificorp , No. 2:12-CV-287-TC-BCW, 2016 WL 10520301 (D. Utah Feb. 22, 2016). The following excerpt from Chevron is pertinent:
Here, the Court has no doubt that the Draft Report was created with potential litigation in mind. However, the Court is not persuaded that litigation was a "primary motivating purpose" of this document. This is true in light of the very strong evidence RMP has presented with regard to environmental regulations Chevron had to comply with and Chevron's overarching concerns at the time the spill occurred. Namely, Chevron had legitimate business purposes for the creation of the Draft Report. Chevron was rightly concerned about determining the cause of the spill in order to prevent further leakage and prevent future events from occurring. In addition, upon review, despite the alleged purposes contained in the Legal Charter, the Draft Report contains no language that suggests a particular litigation strategy nor due to the collaborative manner in which this document was created, is it clear if any of its conclusions are explicitly made by counsel or are included solely for counsel to form a litigation strategy.
Id. at *4 (emphasis in original).
Louisiana has also used the "primary motivating purpose" approach in the dual-purpose-document arena. In Chevron Midstream Pipelines LLC v. Settoon Towing LLC , No. 13-CV-2809, 2015 WL 65357 (E.D. La. Jan. 5, 2015), the district court recognized the following:
The Fifth Circuit has described the standard for determining whether a document has been prepared in anticipation of litigation as follows:
It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine. We conclude that litigation need not necessarily be imminent, as some courts have suggested, as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.
....
"If the document would have been created regardless of whether litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation." ... As one court has observed:
Following any industrial accident, it can be expected that designated personnel will conduct investigations, not only out of a concern for future litigation, but also to prevent reoccurrences, to improve safety and efficiency in the facility, and to respond to regulatory obligations. Determining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question.
Id. at *6-7 (internal citations omitted).
The second approach to determine whether a dual-purpose document may be protected by the attorney-work-product doctrine is sometimes referred to as the "because of" test. This approach was adequately discussed in United States v. Richey , 632 F.3d 559, 567-68 (9th Cir. 2011) as follows:
In circumstances where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the "because of" test is used. Dual purpose documents are deemed prepared because of litigation if "in light of the nature of the document and the factual situation in the particular case, *375 the document can be fairly said to have been prepared or obtained because of the prospect of litigation." In applying the "because of" standard, courts must consider the totality of the circumstances and determine whether the " 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.' "
(Internal citations omitted.)
That brings me to my conclusion. Regardless of whether the trial court utilizes the "primary motivating purpose" approach or the "because of" approach, Entergy failed to sustain its burden of proving an entitlement to the attorney-work-product doctrine. Here, the record indicates that the first root-cause report was heavily redacted, rendering appellate review meaningless. The second root-cause report was not introduced into evidence, thereby preventing any appellate review. Therefore, the only evidence in the record regarding the primary motivating purpose of the reports or whether the reports were in substantially similar form but for the prospect of litigation, is the affidavit of Entergy attorney, Timothy Matthews. Matthews's affidavit is sufficient to show that the reports were created for the dual purpose of preparation in anticipation of litigation and in the regular course of Entergy's business; but the affidavit does not contain sufficient evidence to sustain Entergy's burden of proving that the primary motivating purpose of the root-cause reports was in preparation of litigation or that the reports were in substantially similar form but for the prospect of litigation. Although the affidavit includes language explaining that the report was prepared in anticipation of litigation, it also states that the NRC-recognized methodologies were used to implement additional corrective actions to prevent the recurrence of an accident such as the one in the case at hand. Further, Entergy's counsel at the hearing conceded that these two reports would have been produced regardless of the anticipation of litigation. Therefore, borrowing from the rationale in Galvan , Chevron , and Richey , and based on our standard of review, I would conclude the trial court did not err in finding that the root-cause reports are not subject to the attorney-work-product doctrine and should be delivered to separate appellee Bigge because Entergy failed to sustain its burden of proof. Having said that, I would repeat the admonition in Galvan , where the Galvan court stated: "[T]he court in no way concludes that root cause analysis reports or conclusions are never protected by the work-product doctrine or the attorney-client privilege; in many cases they are protected from disclosure." Galvan , 2012 WL 5873633, at *2.