**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-55447 |
| Petitioner-Appellee, | D.C. No. 2:19-cv-09204-DDP-JC |
| v. | |
| JEHAN AGRAMA, | MEMORANDUM* |
| Respondent-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted April 19, 2023
Pasadena, California

Before: WARDLAW and KOH, Circuit Judges, and MCMAHON,** District
Judge.

Frank Agrama appeals from the district court's order enforcing an Internal
Revenue Service ("IRS") summons that requires Agrama to appear and produce for
examination certain records, including records related to his prosecution for tax

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Colleen McMahon, United States District Judge for
the Southern District of New York, sitting by designation.

crimes in Italy.[1]  Agrama argues that the summons was issued in bad faith and that, at a minimum, the district court erred by ordering enforcement of the summons without an evidentiary hearing.

We have jurisdiction under 28 U.S.C. § 1291.  We review for clear error the district court's decision to enforce the summons.  *See United States v. Richey*, 632 F.3d 559, 563 (9th Cir. 2011) (citing *David H. Tedder & Assocs., Inc. v. United States*, 77 F.3d 1166, 1168 (9th Cir.1996)).  We review the district court's decision not to hold an evidentiary hearing for abuse of discretion.  *See United States v. Clarke*, 573 U.S. 248, 255–56 (2014) (citations omitted).  We affirm.[2]

The district court did not clearly err by enforcing the summons, nor did it abuse its discretion by denying Agrama an evidentiary hearing.  To enforce an IRS summons, the Government must make a prima facie showing that the summons was issued in good faith.  *See Crystal v. United States*, 172 F.3d 1141, 1143–44 (9th Cir. 1999).  The Government does so by showing that (1) the investigation

---

[1] Respondent-Appellant Frank Agrama passed away on April 25, 2023, shortly after oral argument was heard on this appeal.  Jehan Agrama, the daughter of Frank Agrama and the co-trustee of the Agrama Trust, which is the custodian of the summonsed records, has filed an unopposed motion to be substituted as respondent-appellant pursuant to Federal Rule of Appellate Procedure 43(a)(1).  That motion is GRANTED.  However, in this memorandum disposition we refer to the decedent, Frank Agrama, as the Respondent-Appellant.

[2] The parties are familiar with the facts of this case, so we include them only as necessary to resolve the appeal.

will be conducted pursuant to a legitimate purpose; (2) the information sought may be relevant to that purpose; (3) the information sought is not already within the IRS's possession; and (4) the administrative steps required by the Internal Revenue Code have been followed. *United States v. Powell*, 379 U.S. 48, 57–58 (1964). The Government's burden "is a slight one, and may be satisfied by a declaration from the investigating agent that the *Powell* requirements have been met." *Richey*, 632 F.3d at 564 (quoting *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1414 (9th Cir. 1993)).

If the Government meets its burden, the taxpayer challenging the summons then has the "heavy" burden of proving either lack of institutional good faith or an abuse of process. *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 314–16 (1978). There is an abuse of process if the summons was "issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58. A taxpayer challenging a summons is entitled to an evidentiary hearing only when "he can point to specific facts or circumstances plausibly raising an inference of bad faith." *Clarke*, 573 U.S. at 254.

The district court did not err by concluding that the Revenue Agent's declaration was sufficient to meet the Government's initial burden to show good

3

faith, as the Agent's declaration indicates that each of the *Powell* factors are met.

Moreover, the district court did not clearly err in rejecting Agrama's contention

that the IRS did not meet the third *Powell* factor. The third *Powell* factor serves to

prohibit the issuance of "unnecessary summonses that are designed to 'harass the

taxpayer' or that otherwise abuse the court's process." *Action Recycling Inc. v.*

*United States*, 721 F.3d 1142, 1146 (9th Cir. 2013) (citing *Powell*, 379 U.S. at 54–

59). But "[it] was not designed . . . to obstruct the ability of the IRS to obtain

relevant information necessary to a legitimate investigation." *Id.* (citing *United*

*States v. Euge*, 444 U.S. 707, 711 (1980). Pursuant to that goal, we have long held

that the IRS may issue a summons to confirm the completeness and accuracy of

documents obtained from another source. *See Liberty Fin. Servs. v. United States*,

778 F.2d 1390, 1393 (9th Cir. 1985).

Although the IRS concedes that it already possesses some of the material

covered by the summons, the agency does not possess all of the summonsed

documents, and it knows that at least some documents in its possession are

incomplete. Agrama offers no evidence to prove — or even to raise a plausible

inference — that the IRS summons is motivated by anything other than a desire to

ensure that it has accurate and complete copies of anything it has obtained from

other sources. And since it was unnecessary to determine to what extent

documents in the IRS's possession were duplicative of the documents sought, the

4

district court did not abuse its discretion by denying Agrama an evidentiary hearing on this point.

Agrama also argues that he is barred from producing the so-called Mutual Legal Assistance Treaty ("MLAT") documents because Italy could not itself produce those documents to the IRS without first obtaining permission from Hong Kong, Switzerland, and Ireland, per the terms of the relevant MLATs. But he offers no evidence that the laws of Italy or the terms of the MLATs would be offended by *his* production of the MLAT documents that are in *his* possession in connection with a U.S. investigation into *his* conduct as a U.S. citizen. As such, he cannot challenge enforcement of the summons on the ground that principles of international comity demand nonenforcement. *See United States v. Vetco Inc.*, 691 F.2d 1281, 1289 (9th Cir. 1981) ("The party relying on foreign law has the burden of showing that such law bars production.").

Agrama next argues that it is an abuse of judicial process to seek court enforcement of a summons issued in connection with an investigation that "intensified" because of information obtained during an unconstitutional search. *United States v. Beacon Fed. Sav. & Loan*, 718 F.2d 49, 53 (2d Cir. 1983). Agrama claims that the "scope or focus" of the current IRS investigation, and of this summons specifically, was shaped and intensified by evidence derived from the Federal Bureau of Investigation's ("FBI") illegal search of his Los Angeles

home in 2006. Specifically, Agrama claims that the IRS's current investigation was spurred by information from an Italian forensic accountant, Gabriela Chersicla, who was present during the FBI's 2006 search. Agrama presses this claim even though the report Chersicla produced at the behest of Italian prosecutors ("Chersicla Report") was based not on the FBI's search, but on review of documents seized in Hong Kong in 2007.

Agrama's argument is flawed both legally and factually. Because Agrama concedes that the FBI—not the IRS—conducted the 2006 search of his premises, enforcement of the IRS summons would not constitute an abuse of judicial process absent proof of cooperation between the FBI and IRS. *See Grimes v. Comm'r*, 82 F.3d 286, 290 (9th Cir. 1996) (holding that evidence illegally obtained by other law enforcement agencies should not be suppressed in an IRS civil tax proceeding unless there is "an agreement between agencies"). Notably, *Beacon* — the Second Circuit case on which Agrama principally relies — is inapplicable on the facts before us because it concerns an illegal search *that was conducted by the IRS*. *See* 718 F.2d at 53–55.

Further, the district court correctly concluded that receipt of the Chersicla Report did not shape the "scope or focus" of the IRS' investigation into Agrama. Agrama's argument that the IRS's investigation was shaped by the Chersicla Report rest on little more than speculation. In fact, even if the IRS never obtained

6

the Chersicla Report, it would have opened an investigation into Agrama: in February 2013, months before the Chersicla Report was completed, Agrama was expelled from the IRS's voluntary disclosure program for failure to disclose his criminal indictment in Italy, and IRS rules mandate the automatic examination of any taxpayer removed from the voluntary disclosure program.

Even assuming *arguendo* that the "scope or focus" of the IRS investigation was somehow impacted by the Chersicla Report, Agrama does not identify anything in that Report, or in any of other MLAT documents, that qualifies as privileged information — information that should not have been seen by Italian authorities during the 2006 FBI search. Agrama possesses the summonsed documents, so he should be able to identify any arguably tainted information they contain. As he did not do so, he failed to demonstrate that enforcement of the summons would constitute an abuse of process.

Finally, Agrama asserts that the summons should not be enforced because the IRS obtained the Chersicla Report from the Italian government in contravention of the Convention for the Avoidance of Double Taxation with Respect to Taxes on Income and the Prevention of Fraud or Fiscal Evasion, It.-U.S., Aug. 25, 1999, T.I.A.S. No. 09-1216 ("Tax Treaty"). There is no evidence that the IRS obtained the Chersicla Report via the Tax Treaty; the agency was given the Chersicla Report by a U.S. government official in Italy. Because

Agrama failed to advance any factual allegations suggesting that the Chersicla Report was obtained illegally, the district court did not abuse its discretion by denying Agrama's request for a hearing on this issue.

**AFFIRMED.**[3]

---

[3] In light of a new argument raised by the Government on appeal, Agrama moves to supplement the record with, or for the court to take judicial notice of, a 2006 email exchange. However, our affirmance is limited to the grounds relied upon by the district court, so Agrama's motion is DENIED as moot.